United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 16, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 06-10747

_____

GWTP INVESTMENTS, L.P.

                              Plaintiff-Appellant,

                    v.

SES AMERICOM, INC.

                              Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas, Dallas

_____

Before SMITH, BENAVIDES and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

GWTP Investments ("GWTP")[1] brought this suit against SES Americom ("SES") for breach of contract, fraud, and breach of fiduciary duty. It claims that SES agreed to purchase teleports on its behalf at a bankruptcy auction, but after SES won the auction

_____

[1] Immediately prior to the auction, Mission Holdings formed a partnership with a third party to create GWTP. Some of the events described herein occurred with Mission Holdings acting as representative of GWTP, but neither party attributes any significance to this distinction so we refer only to GWTP.

1

and attained the rights to the teleports, it refused to transfer them to GWTP. Finding that there was no binding contract and that the fraud claim was just a repackaged contract claim, the district court dismissed the contract and fraud claims. It subsequently granted summary judgment on the fiduciary duty claim.

We REVERSE the district court's judgment concerning the fraud claim and REMAND for further proceedings. We AFFIRM the judgment in all other respects.

## I. FACTS

On March 30, 2004, Verastar, Inc.'s assets were sold in a bankruptcy auction. Verastar was in the business of operating teleports, which provide access to communications satellites and other long-distance media. In total, eight teleports were up for bid at the auction. There were two potential phases of the auction: first, a select few corporations would be allowed to bid on all eight teleports combined ("Asset Pool 1"), and second, bids for each of the eight teleports would be accepted individually ("Asset Pools 2-9"), presumably to gauge which method of sale would yield the greatest profit from the most viable bidders. The auction ended after the first phase of bidding and the second phase never took place.

SES was one of three companies allowed to bid during the first phase on Asset Pool 1, but GWTP was not. GWTP learned that SES only wanted six of the eight teleports, while GWTP was primarily interested in the remaining two, located in Cedar Hill, Texas and

2

Brewster, Washington. On March 29, the day before the auction, GWTP and SES discussed a strategy whereby they would coordinate their bids to increase the likelihood that each would get its desired teleports. To that end, they drafted a "Memorandum of Understanding" ("MOU"), stating that they "agree to discuss bidding strategy and tactics in order to present the most attractive offer to the Verestar auctioneers." Slightly different versions of the MOU were signed by each party, but each version stated that "under no circumstances would this MOU be legally binding on or enforceable against either party."

When phase 1 of the bidding started, SES and GWTP devised a formula to determine what percentage of SES's overall bid GWTP would contribute for the Cedar Hill and Brewster teleports. As the auction progressed, SES's representatives repeatedly collaborated with GWTP's representative, Jeffery Wateska, in determining their bid. When the total bid on Asset Pool 1 reached $13 million, and GWTP's expected contribution under the devised formula was $1.35 million, Wateska informed SES representatives that GWTP would have to cap its potential contribution at $1.5 million "regardless of what the SES bid was ultimately going to be."

SES won the auction. Brent Bruun, SES's primary representative at the auction, quickly sent e-mail messages ("Bruun e-mails") to SES's parent company and its CFO announcing that it won the auction. The e-mail then listed the "Significant terms of the deal," which included that "[SES] signed an MOU with [GWTP] in

which [GWTP] agreed to acquire the Cedar Hill and Brewster Teleports for $1.5 million at closing."[2] Bruun also called Wateska and a GWTP executive, stating that "we've won the auction" and thanking GWTP for its cooperation. There were further communications between SES and GWTP, but all involved rather vague assurances of "moving forward."

It quickly became apparent that SES was interested in retaining the Brewster teleport. Two days after the auction ended, an SES executive sent the following e-mail to Bruun:

> Can we talk about [GWTP]? They are not warming to the idea of taking only Cedar Hill. I have removed their suspicion that we were cutting another deal on the side for Brewster, but they make the following point[]:
>
> They entered into an agreement with us because we stated during the auction (or before?) that the two assets we did not want were the exact two assets that [GWTP] did want—Brewster and Cedar Hill . . . .

SES continued to review and consider the profitability of the Cedar Hill and Brewster teleports in the following weeks, and eventually decided to retain them. It informed GWTP that it viewed their previous discussions as providing for only "an understanding" rather than a legal obligation. GWTP expressed its disagreement and this lawsuit followed.

GWTP asserted three claims against SES in its complaint: (1) breach of contract, (2) fraud, and (3) breach of fiduciary duty as

---

[2] The two e-mails varied slightly, as the one to the CFO stated that SES "agreed to sell" the teleports to GWTP, as opposed to the "agreed to acquire" language.

4

its agent. The district court summarily dismissed the first two claims on a 12(b)(6) motion, finding that the Statute of Frauds barred the contract claim and the fraud claim, as it was merely a repackaged version of the contract claim. More than seven months after the deadline to amend pleadings passed, GWTP moved to amend its pleadings on the contract and fraud claims to include an argument that the Bruun e-mails satisfied the Statute of Frauds. The district court denied GWTP's motion. Subsequently, the district court granted SES's motion for summary judgment on the remaining agency claim.

## II. DISCUSSION

In turn, we consider (1) the dismissal of the contract claim, (2) the dismissal of the fraud claim, and (3) the summary judgment on the agency claim. These are all claims based on state law and it is uncontested that Texas law is applicable. We review dispositive motions such as dismissals and summary judgments *de novo*. *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 364 (5th Cir. 2000).

## A. The Breach of Contract Claim and the Statute of Frauds

In Texas, a contract for the sale of real estate "is not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him." TEX. BUS. & COM. CODE § 26.01(a), (b)(4). The Cedar Hill

5

and Brewster teleports are completely terrestrial and are built along 127 acres of real estate. The district court dismissed GWTP's contract claim, finding it was barred by the Texas Statute of Frauds because "the sale of the Teleports necessarily involves the sale of real estate."

GWTP does not suggest that there is any writing that sufficiently memorialized its agreement with SES, because the MOU was explicitly non-binding in all of its versions.[3] Instead, they argue that the "primary purpose" exception to the Statute of Frauds applies, making the alleged oral contract enforceable. The "primary purpose" or "main purpose" exception to the Statute of Frauds usually arises when either (1) a promise to pay the debt of a third party is made for the primary benefit of the promisor, *see Cooper Petroleum Co. v. LaGloria Oil & Gas Co.*, 436 S.W.2d 889 (Tex. 1969), or (2) a contract involving the sale of goods is predominantly for the sale of services. *See Propulsion Techs., Inc. v. Attwood Corp*., 369 F.3d 896, 900-01 (5th Cir. 2004).

---

[3] Very late in the proceedings, GWTP moved to amend its complaint in order to include an argument that the Bruun e-mails satisfied the Statute of Frauds, but the district court denied that motion. Given that the motion to amend was filed more than seven months after the filing deadline and nearly six months after GWTP acquired the relevant e-mails, and GWTP's failure to point to any legitimate explanation for its delay in moving to amend, the district court was well within its discretion in denying that motion. We therefore do not address the argument that the Bruun e-mails satisfied the Statute of Frauds, and limit our consideration to GWTP's argument that the Statute of Frauds is inapplicable to this transaction.

GWTP argues that the dominant purpose of this contract was to convey customer networks, service areas, and other intangibles that flow with the purchase of teleports.  GWTP basically attempts to expand the "primary purpose" test to apply to real estate transactions when the real estate's commercial viability forms the basis of the underlying transaction.  This is a novel argument and there are no Texas cases directly rejecting it, but the caselaw strongly weighs against it in these circumstances.

GWTP relies predominantly on *Hydrocarbon Horizons, Inc. v. Pecos Dev. Corp.*, 797 S.W.2d 265 (Tex. App.—Corpus Christi 1990), *writ denied*, 803 S.W.2d 266 (Tex. 1991).  In that case, the plaintiff agreed to show two oil and gas prospects, which it did not own, to the defendant.  The parties agreed that the plaintiff would receive a finder's fee if defendant chose to purchase the prospects from a third party within two years.  In finding that this contract was outside the Statute of Frauds, the court found that "[t]he contract alleged by Hydrocarbon was not one for the sale of real estate . . . . [rather] the main purpose of the contract is for the sale of geological information, and the statute of frauds is not implicated merely because a real estate transaction may be incidentally involved."  *Id.* at 267.

GWTP's reliance on *Hydrocarbon* is misplaced.  In *Hydrocarbon*, as opposed to this case, the alleged contract was not for the sale of real estate at all.  It was a "finder's fee" contract containing

7

an obligation triggered by a completely independent real estate transaction. The contract was for a finder's fee, but it was only due if the defendant purchased the acreage from a third party. It was not a real estate transaction, even if it was triggered by one.

In this case, the alleged contract is undeniably for the transfer of real estate (teleports), and GWTP's argument that the teleports are incidental to the primary purpose of obtaining customer networks drastically extends *Hydrocarbon's* rationale.[4] Because the Statute of Frauds serves an important gate-keeping function in keeping litigation costs to a minimum in cases like this, we will not cavalierly apply Texas's narrow "primary purpose" exception so liberally as GWTP requests.

As SES points out, "GWTP cites no case that actually applies such a test to enforce an oral contract to sell real property." Indeed, we have found none. Given the plain language of Texas's Statute of Frauds and lacking an applicable exception, we find that

---

[4] Because the facts of *Hydrocarbon* are somewhat complex, consider a scenario where two entrepreneurial friends agree that whoever is last to purchase a new house will clean the other's pool for a year. Under *Hydrocarbon's* rationale, that agreement is not subject to the Statute of Frauds. It is a contract for pool-cleaning services and it is not brought within the Statute of Frauds merely because an independent real estate transaction triggers the underlying obligation.

GWTP's reasoning would apply that theory to a case where an individual is buying a house, but claims that he is not so interested in the physical house as he is the wonderful view, the neighbors, the nearby schools, the airspace, etc. That rationale extends *Hydrocarbon's* rationale past the breaking point and would render the Statute of Frauds a virtual nullity in real estate cases.

Texas's Statute of Frauds bars the alleged oral contract.

## B.  *The Fraud Claim and Reliance Damages*

The district court dismissed GWTP's fraud claim finding that it was just a repackaging of its contract claim and barred by the Statute of Frauds.  It stated that "SES's alleged fraudulent misrepresentations [were] not separate from the alleged oral promise to transfer the Teleports and thus [were] promissory, rather than factual."  The district court erred because GWTP alleged that SES made misrepresentations separate from those supporting its contract claim, sought only reliance damages, and otherwise properly pled all the required elements of a fraud claim.

To establish actionable fraud, the plaintiff must prove that the defendant made "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990).  GWTP properly alleged each element of its fraud claim, stating that SES knowingly made material misrepresentations both before and in the weeks following the auction, and that it incurred substantial reliance damages in preparing to staff and operate the teleports.

GWTP specifically referred to misrepresentations SES executives made on April 8 and April 23, assuring GWTP that it had undertaken steps to finalize their earlier agreement.  GWTP

9

provided evidence that these factual misrepresentations were known to be false, as an SES executive's e-mail to Bruun on April 2 stated, "I have removed [SES's] suspicion that we were cutting another deal on the side for Brewster." That language at least suggests that SES was in fact cutting a deal with a third party, and merely removed GWTP's well-founded suspicion as to that fact. The fraud claim is distinct from the breach of contract claim as these post-auction misrepresentations did not form the basis of the contract that GWTP alleges was made before and during the auction.

Moreover, even if GWTP's fraud claim relied purely on contractual or promissory statements, it is not a repackaging of its contract claim because GWTP's fraud claim seeks only reliance damages. GWTP only sought the out-of-pocket damages incurred in preparing to operate the teleports. SES correctly points out that fraud claims cannot be used to circumvent the Statute of Frauds, but that is only true insofar as the plaintiff seeks the benefit of the contractual bargain. "The essential inquiry in determining whether a plaintiff is attempting to use a fraud claim to circumvent the Statute of Frauds is to examine the nature of the injury that he alleges." *Leach v. Conoco, Inc.*, 892 S.W.2d 954, 960 (Tex. App.—Houston 1995); *see also Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ("The nature of the injury most often determines which duty or duties are breached.").

The Texas Supreme Court has held that "the Statute of Frauds

bars a fraud claim *to the extent* the plaintiff seeks to recover as damages the benefit of a bargain that cannot otherwise be enforced because it fails to comply with the Statute of Frauds." *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001) (emphasis added). However, such a claim "may not contravene the Statute of Frauds to the extent that [it] seeks out-of-pocket damages incurred in relying upon" the alleged misrepresentations. *Id.* The Texas Supreme Court recently clarified that "[t]he statute of frauds does not bar the recovery of out-of-pocket damages for fraud . . . . The viability of [a] fraud claim depends upon the nature of the damages [one] seeks to recover." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007).

The Statute of Frauds does not bar GWTP's fraud claim insofar as it seeks only reliance damages, and the district court erred when it dismissed the claim.

## C. The Agency Claim

GWTP's final claim is that SES was its agent in bidding on the Verastar teleports and SES's actions constituted a breach of fiduciary duty. This claim is meritless and the district court properly granted summary judgment.

"Under Texas law, agency is a legal relationship created by the express or implied agreement between the parties, or by operation of law, under which the agent is authorized to act for and on behalf of the principal, and subject to the principal's

11

control." *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 269 (5th Cir. 1980). Texas courts have adopted the rule that a party "who contracts to acquire property from a third person and convey it to another is the agent of the other only if it is agreed that he is to act primarily for the benefit of the other and not for himself." *Id.* at 270 (citing RESTATEMENT (SECOND) OF AGENCY § 14(k)). Factors that indicate a party is *not* acting as an agent of another include, (1) that he is to receive a fixed price for the property; (2) that he acts in his own name and takes title of the property before transferring it; and (3) that he has an independent business buying and selling the property. *Id.*

This is not a close question. SES was bidding collectively on eight teleports and paid approximately $20 million for the lot. It defies logic to suggest that GWTP's proposed $1.5 million contribution to the massive collective bid somehow controlled SES's bidding activity. It is similarly inconceivable that SES was bidding in a way so as to primarily benefit GWTP, as an agency relationship requires. That GWTP was to pay a fixed price for the teleports also strongly supports the conclusion that SES was not acting as its agent. RESTATEMENT (SECOND) OF AGENCY § 14(k) cmt. a (providing "[t]his is the most important" factor in determining whether an agency relationship exists).

The district court properly granted SES's motion for summary judgment as GWTP has not presented a genuine issue of material fact

12

suggesting that SES was ever acting as its agent.

### III.  CONCLUSION

The district court erred when it dismissed GWTP's fraud claim, and we REVERSE that dismissal and REMAND for further proceedings consistent with this opinion.  As to the breach of contract and agency claims, the district court's rulings are AFFIRMED.