Opinion issued October 9, 2008 















In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00711-CV

__________


MARYLAND CASUALTY COMPANY, Appellant


V.


AMERICAN HOME ASSURANCE COMPANY AND ILLINOIS
NATIONAL INSURANCE COMPANY, AS SUBROGEES OF NATIONAL
EQUIPMENT SERVICES, INC., Appellees






On Appeal from the 113th District Court

Harris County, Texas

Trial Court Cause No. 2003-04805






O P I N I O N

 Appellant, Maryland Casualty Company ("Maryland"), challenges the trial
court's rendition of summary judgment in favor of appellees, American Home
Assurance Company ("American") and Illinois National Insurance Company
("Illinois), as subrogees of their insured National Equipment Services, Inc. ("NES"). 
The trial court concluded that American and Illinois are entitled to insurance coverage
from Maryland because NES qualified as an additional insured under a commercial
general liability insurance policy issued by Maryland. Maryland brings four issues
for our review. In its first and second issues, Maryland contends that the trial court
erred in denying its summary judgment motion and in rendering summary judgment
in favor of American and Illinois as their subrogation claims "are barred as a matter
of law" under Mid-Continent Insurance Co. v. Liberty Mutual Insurance Co., (1) the
pertinent indemnity clause did not establish that NES was an additional insured under
Maryland's insurance policy and American and Illinois are not entitled to indemnity,
and the evidence conclusively established that NES failed to comply with "the
conditions precedent to coverage." In its third and fourth issues, Maryland contends
that the trial court abused its discretion in denying Maryland's motion to reopen the
summary judgment evidence and in awarding American and Illinois damages in
excess of the limits of Maryland's policy.

 We reverse and render. 


Factual and Procedural Background


 On October 28, 2000, three Laser Construction ("Laser") workers were killed
when a trench in which they were working caved in. The workers were in a "trench
box" that NES had leased to Laser. The families of the deceased workers sued NES,
among others, in Fort Bend County ("the Vasquez lawsuit"), but they did not sue
Laser. NES then filed a third-party petition against Laser in the Vasquez lawsuit, in
which it asserted that it was entitled to be indemnified by Laser based on the parties'
equipment lease agreement for the trench box. However, pursuant to a Rule 11
agreement (2) between NES and Laser, Laser did not file an answer to the third-party
petition, and NES agreed to refile its claim against Laser in a separate proceeding in
Harris County. American, which provided "primary insurance" to NES, and Illinois,
which provided a "commercial umbrella policy" to NES, ultimately settled the
Vasquez lawsuit on behalf of NES. Pursuant to this settlement, American allegedly
"incurred liability and expenses in excess of" $1,000,000 and Illinois allegedly
"incurred liability in the amount of" $1,250,000. 

 After American and Illinois had settled the Vasquez lawsuit on NES's behalf, 
NES, in an October 17, 2002 letter, made its first demand upon Maryland for
"insurance coverage." American and Illinois, as subrogees of NES, subsequently
filed the instant lawsuit against Maryland, seeking insurance coverage (3) from
Maryland for the settlement amounts and attorney's fees that they had expended in
defending and settling the Vazquez lawsuit on NES's behalf. (4) American and Illinois
sought proceeds from insurance coverage from Maryland's policy, asserting that NES
qualified as an additional insured under Maryland's policy. 

 Maryland's policy identified Laser as the named insured and further provided,
in relevant part,

 2. Each of the following is also an insured:


 . . . . 


 (i) Any person or organization who is the lessor of leased equipment
leased to you, but only with respect to their liability arising out of
the maintenance, operation or use by you of such equipment
subject to the following additional exclusions:


 This insurance does not apply to:


 (1) Any "occurrence" that takes place after the
equipment lease expires; or


 (2) "Bodily injury" or "property damage" arising
out of the sole negligence of that person or
organization.


 Maryland filed an answer, generally denying the allegations and asserting that,
even if NES qualified as an additional insured, coverage for NES was barred because
NES had failed to comply with the "voluntary payment" (5) and notice provisions of the
policy. The policy, in relevant part, provided, Section IV--Commercial General Liability Conditions


 2. Duties in the event of an occurrence, Offense, Claim or Suit.


 a. You must see to it that we are notified as soon as practicable of an
"occurrence" or an offense which may result in a claim. To the
extent possible, notice should include:


 (1) How, when, and where the "occurrence" or offense
took place;


 (2) The names and addresses of any injured persons and
witnesses; and


 (3) The nature and location of any injury or damage
arising out of the "occurrence" or offense.


 b. If a claim is made or "suit" is brought against any insured, you
must:


 (1) Immediately record the specifics of the claim or
"suit" and the date received, and


 (2) Notify us as soon as practicable.

 

 You must see to it that we receive written notice of the claim or "suit"
as soon as practicable.


 . . . .


 d. No insured will, except at that insured's own cost, voluntarily
make a payment, assume any obligation, or incur any expense,
other than for first aid, without our consent.


 Maryland's policy also contained the following endorsement:


 Texas Changes-Conditions Requiring Notice


 . . . . 


 With regard to Bodily Injury and Property Damage
Liability, unless we are prejudiced by the insured's or your failure
to comply with the requirement, any provision of this Coverage
Part requiring you or any insured to give notice of "occurrence,"
claim or "suit," or forward demands, notices summonses or legal
papers in connection with a claim or "suit" will not bar coverage
under this Coverage Part.

 

 Concurrent with filing its answer, Maryland filed a summary judgment motion,
in which it asserted that, even assuming that NES qualified as an additional insured, (6)
NES had "lost any coverage" by violating the above policy provisions. In support of
its motion, Maryland attached an October 17, 2002 letter from NES's counsel to
Laser's counsel in which NES, for the first time, sought "insurance coverage" for the
Vasquez lawsuit. By October 17, 2002, American and Illinois had already fully
settled the Vasquez lawsuit on NES's behalf . Thus, Maryland's evidence established
that NES did not seek a defense or insurance coverage from Maryland, based upon
the assertion that NES qualified as an additional insured under Maryland's policy,
until after American and Illinois had entered into the Vasquez settlement. This
evidence further established that Maryland did not have the opportunity to investigate
or defend the claims made against NES in the Vasquez lawsuit, review and consider
the Vasquez settlement, or consent to the Vasquez settlement. (7) 

 In their summary judgment response, American and Illinois did not dispute that
they, as subrogees of NES, had demanded insurance coverage from Maryland for the
amounts they had paid to settle the Vasquez lawsuit until after they had entered into
the settlement. American and Illinois also did not dispute that both they and NES had
failed to give Maryland any notice, before settlement, that NES claimed to be an
additional insured and that NES expected to be covered and defended by Maryland
for the Vasquez lawsuit and settlement. Rather, they asserted that Laser had first
produced Maryland's policy to NES "[s]hortly after the conclusion of the underlying
Vasquez lawsuit." (8) American and Illinois claimed that, at that point, they first noticed
the additional insured provision and that NES then sent Laser and Maryland the
October 17, 2002 letter requesting coverage. American and Illinois further asserted
that it was undisputed that Laser, prior to the Vasquez settlement, had knowledge of
NES's claim for contractual indemnification under the equipment lease agreement, (9)
"Laser never informed [NES] of the additional insured provision in [Maryland's]
policy," and NES "could not have known of the additional insured provision in
[Maryland's] policy until that policy was produced to NES." Finally, American and
Illinois asserted that "an additional insured's lack of knowledge concerning the
existence of coverage can sometimes excuse delayed notice and voluntary payment." 

 American and Illinois also filed a motion for summary judgment, in which they
asserted that NES qualified as an additional insured under Maryland's policy. In a
portion of their summary judgment motion entitled "damages," American and Illinois
repeated their contention that they had collectively incurred $2,250,000 in liability
in the Vasquez lawsuit. (10) Maryland filed a response to American and Illinois's
summary judgment motion, in which it again argued that NES was not entitled to
coverage because it had violated the notice and settlement-without-consent provisions
of the policy. 

 The trial court granted American and Illinois's motion for summary judgment
and, in its order, found that NES was "entitled to be paid/reimbursed from
[Maryland's] policy in the amount of $2,250,000," representing the full amount
allegedly incurred by American and Illinois in the Vasquez lawsuit. The trial court
also awarded American and Illinois its attorney's fees and expenses for both the
Vasquez lawsuit and the instant suit. The trial court denied Maryland's summary
judgment motion.

 Maryland then filed a motion to modify judgment, in which it stated that its
policy provided coverage only in the amount of $1,000,000 for each occurrence, and
it asked the trial court to change the judgment to reflect that Maryland could be
obligated to pay, at most, its policy limit of $1,000,000. Maryland also argued that
the judgment should be modified to reflect "the effect of other insurance clauses
contained" in its policy and American's policy. Maryland contended that it and
American were "co-primary" insurers, and thus they were required to contribute equal
shares. (11) The trial court denied Maryland's motion to modify judgment.

 We dismissed Maryland's initial appeal of the summary judgments for lack of
a final, appealable judgment. See Md. Cas. Co. v. Am. Home Assurance Co., No. 01-06-00237-CV, 2007 WL 926514 (Tex. App.--Houston [1st Dist.] Mar. 29, 2007, no
pet.) (mem. op.). On remand, the trial court signed a final judgment in favor of
American and Illinois and incorporated its previous summary judgments. Maryland
then filed a motion for new trial, a motion for reconsideration, and a motion to reopen
summary judgment evidence, all of which the trial court denied.

Standard of Review

 To prevail on a summary judgment motion, a movant has the burden of proving
that it is entitled to judgment as a matter of law and that there is no genuine issue of
material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995). A plaintiff moving for summary judgment on its claim must establish its right
to summary judgment by conclusively proving all the elements of its cause of action
as a matter of law. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999);
Anglo-Dutch Petroleum Int'l, Inc. v. Haskell, 193 S.W.3d 87, 95 (Tex.
App.--Houston [1st Dist.] 2006, pet. denied). When a defendant moves for summary
judgment, it must either (1) disprove at least one essential element of the plaintiff's
cause of action or (2) plead and conclusively establish each essential element of its
affirmative defense, thereby defeating the plaintiff's cause of action. Cathey, 900
S.W.2d at 341; Yazdchi v. Bank One, Tex., N.A., 177 S.W.3d 399, 404 (Tex.
App.--Houston [1st Dist.] 2005, pet. denied). When both parties move for summary
judgment and the trial court grants one motion and denies the other, the reviewing
court should review the summary judgment evidence presented by both sides and
determine all questions presented and render the judgment that the trial court should
have rendered. Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex., 136
S.W.3d 643, 648 (Tex. 2004). 

Additional Insured's Violation of Notice 

and Settlement-Without-Consent Provisions


 In part of its second issue, Maryland argues that the trial court erred in denying
its summary judgment motion and in rendering summary judgment in favor of
American and Illinois because the evidence conclusively established that NES failed
to comply with "the conditions precedent to coverage," (12) namely the notice and
settlement-without-consent provisions of the policy. Maryland asserts that its right
to adjust and defend against the underlying claims against NES in the Vasquez
lawsuit was prejudiced as a matter of law by NES's violations of Maryland's policy. 
American and Illinois do not dispute that NES first gave notice to Maryland of its
additional insured claim only after they had settled the Vasquez lawsuit. American
and Illinois assert, however, that Maryland presented no evidence that it was actually
prejudiced by the alleged policy breaches. American and Illinois also assert that
Maryland's actual knowledge of the claims against NES in the Vasquez lawsuit and
Maryland's participation in that suit through the defense of Laser "prevents any claim
by [Maryland] that it was prejudiced as a matter of law."

 We begin our analysis of the effect of NES's policy violations on American's
and Illinois's subrogation claims by considering the Texas Supreme Court's recent
opinion in National Union Fire Insurance Co. of Pittsburgh, Pa. v. Crocker, 246
S.W.3d 603 (Tex. 2008). In Crocker, the supreme court considered, on certified
questions from the United States Court of Appeals for the Fifth Circuit, (13) "whether
an insurer has a duty to notify an additional insured of available liability coverage." 
 Id. at 604. Crocker, a nursing home resident, filed suit against a nursing home
employee and the nursing home corporate owner for personal injuries that she
sustained while at the home. Id. The corporation was covered by a commercial
general liability policy and the employee, unbeknownst to him, qualified as an
additional insured under the policy. Id. at 604-05. The insurer did not inform the
employee that he was an additional insured, nor did it offer to defend him in the suit. 
Id. at 605. After the employee was served, he did not forward the suit papers to the
insurer, did not request a defense from the insurer, did not answer the lawsuit, and did
not appear at trial. Id. The trial court severed Crocker's claims against the non-answering employee, and the case was submitted to a jury, which returned a take-nothing verdict in favor of the corporation after finding that the corporation and its
employees were not negligent. Id. The trial court, however, then entered a $1 million
default judgment against the employee. Id.

 Crocker then brought a suit against the liability insurer to collect the judgment,
asserting that she qualified as an additional insured under the insurer's policy and that
she was a third party beneficiary under the policy. Id. at 605. The insurer argued that
because the employee, its additional insured, had failed to comply with the policy's
notice-of-suit provision, he had never invoked coverage or his right to a defense and
Crocker, "who now purport[ed] to stand in [the employee's] shoes," could not collect
under the policy. Id. Crocker responded that even though the employee had not
complied with the policy's notice provision, the insurer was not prejudiced because
it had actual knowledge of the suit. Id. Crocker asserted that the insurer's failure to
notify the employee that he was covered as an additional insured under the policy,
coupled with its actual knowledge of the suit, amounted to a breach of the insurer's
duty to defend, making the insurer liable for the default judgment. Id. at 605-06. 

 On these facts, the Fifth Circuit, in its first certified question, asked:

Where an additional insured does not and cannot be presumed to know
of coverage under an insurer's liability policy, does an insurer that has
knowledge that a suit implicating policy coverage has been filed against
its additional insured have a duty to inform the additional insured of the
available coverage?


Id. at 606.

 The Texas Supreme Court emphasized that "notice and delivery-of-suit-papers
provisions in insurance policies serve two essential purposes: (1) they facilitate a
timely and effective defense of the claim against the insured, and more
fundamentally, (2) they trigger the insurer's duty to defend by notifying the insurer
that a defense is expected." Id. at 606-08 (citing Weaver v. Hartford Accident &
Indemnity Co., 570 S.W.2d 367, 368-70 (Tex. 1978) and Harwell v. State Farm
Mutual Automobile Insur. Co., 896 S.W.2d 170, 172, 174 (Tex. 1995)) (emphasis
added). The supreme court continued, "Mere awareness of a claim or suit does not
impose a duty on the insurer to defend under the policy; there is no unilateral duty to
act unless and until the additional insured first requests a defense--a threshold duty
that the insured fulfills under the policy by notifying the insurer that the insured has
been served with process and the insurer is expected to answer on its behalf." Id. at
608. The supreme court concluded that "an insurer that has not been notified that a
defense is expected bears no extra-contractual duty to provide notice that a defense
is available to an additional insured who has not requested one." Id. Thus, the
supreme court answered the first certified question, "no." Id.

 In its third certified question, (14) which is equally important to this case, the Fifth
Circuit asked the Texas Supreme Court:

Does proof of an insurer's actual knowledge of service of process in a
suit against its additional insured, when such knowledge is obtained in
sufficient time to provide a defense for the insured, establish as a matter
of law the absence of prejudice to the insurer from the additional
insured's failure to comply with the notice-of-suit provisions of the
policy?


Id. at 609. The supreme court also answered this question, "no." Id. The supreme
court first noted that the insurer "was obviously prejudiced in the sense that it was
exposed to a $1 million judgment." Id. (emphasis added). The supreme court then
stated, "The question, however, is not whether [the insurer] suffered exposure to a
financial risk, but whether it should be estopped to deny coverage because it was
aware that [the employee, its additional insured,] had been sued and served and had
ample time to defend him." Id. The supreme court stated that the answer to this
alternative question must also be "no," based upon its prior conclusion that the
insurer had no duty to notify the employee of coverage and no duty to defend the
employee until the employee notified the insurer that he had been served and
expected the insurer to provide a defense on his behalf. Id. The supreme court
reasoned that because the insurer was not under a duty to defend the suit against the
additional insured when it received notice of the claim, it was not estopped from
asserting that the additional insured's breach of the policy's notice provision barred
the insurer's liability. Id. (citing Harwell, 896 S.W.2d at 175). Most relevant to the
issue in this case, the supreme court explained, "Absent a threshold duty to defend,
there can be no liability to [the additional insured], or to Crocker derivatively." (15) 
Id. (emphasis added). 

 The supreme court concluded that "[i]nsurers owe no duty to provide an
unsought, uninvited, unrequested, unsolicited defense." Id. at 610. It reasoned that
because "insurers need not provide coverage to additional insureds who never seek
it," the insurer at issue had no duty to inform the employee of coverage or to
voluntarily undertake his defense and the insurer's "actual knowledge did not
establish lack of prejudice as a matter of law." Id. 

 Based upon these answers, the Fifth Circuit remanded the case to the district
court for the entry of a judgment that Crocker take nothing by her suit against the
insurer. Crocker v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 526 F.3d 240, 241
(5th Cir. 2008). The court summarized the supreme court's opinion as follows:

It is clear from the opinion of the Texas Supreme Court that, because
[the additional insured employee] never gave [the insurer] any notice of
the suit, never complied with the [insurer's] policy's relevant notice
provisions, never furnished it copies of any relevant papers as required
by the policy, and never in any manner requested a defense from [the
insurer], that [the insurer] owed no duty to defend [the additional
insured employee], or to sua sponte notify him that its policy covered
him, and was entitled to rely on its policy provisions precluding
coverage on the basis of such noncompliance.


Id. (emphasis added).

 Crocker and the instant case are similar in many significant respects. Like the
additional insured in Crocker, NES failed to forward the suit papers to its liability
insurer and notify its insurer that it expected a defense and coverage for claims
asserted against it. Like the additional insured in Crocker, NES lacked knowledge
of its additional insured status and of the policy provisions upon which its insurer
subsequently sought to disclaim liability. Like the liability insurer in Crocker,
Maryland had actual knowledge of suit being brought against its additional insured (16)
but did not gratuitously offer its additional insured a defense. Like the liability
insurer in Crocker, Maryland did not receive a request for coverage from its
additional insured until after the additional insured's liability had been settled or
adjudicated. Moreover, like the liability insurer in Crocker, Maryland asserted that
it was prejudiced by its additional insured's violation of the notice provision of the
liability policy and sought to avoid coverage for its additional insured's liability that
had been adjudicated or settled. (17) 

 Based on these significant similarities, we conclude that the analysis employed
by the supreme court in Crocker guides the disposition of the instant case. Crocker
makes clear that Maryland is entitled to rely upon its notice and settlement-without-consent policy provisions to preclude coverage to NES upon a showing that it was
prejudiced by NES's violation of these policy provisions. Crocker also makes clear
that Maryland is entitled to rely upon these policy provisions to defeat coverage
despite the fact that it had notice that NES had been sued in the Vasquez lawsuit and
despite the allegation (which is disputed by Maryland) that NES was not aware of the
additional insured provision in Maryland's policy until after the Vasquez settlement,
when it first obtained a copy of Maryland's policy. Here, the question is whether
Maryland established, or at least raised a fact issue showing, that it was prejudiced
by NES's violation of these policy provisions. 

 The supreme court in Crocker ultimately concluded that the insurer's "actual
knowledge did not establish lack of prejudice as a matter of law." (18) Nevertheless, the
Fifth Circuit, by remanding the case to the district court for the entry of a take-nothing judgment, necessarily interpreted the supreme court's Crocker opinion to
indicate that the insurer, based on the circumstances presented in that case, had
established, as a matter of law, that it had been prejudiced by its additional insured's
violation of the liability insurance policy's notice provision. See Crocker, 526 F.3d
at 241. We also conclude that Maryland has established, as a matter of law, that under
the circumstances presented, it was prejudiced by NES's failure to provide it notice
of the claims made against it in the Vasquez lawsuit and by NES's entry into the
Vasquez settlement without Maryland's consent. Here, similar to the facts of
Crocker, the notice--provided only after the claims had been settled--was so late
that it wholly deprived Maryland of its ability to defend the lawsuit. See Crocker,
526 F.3d at 241; Motiva Enters., LLC v. St. Paul Fire & Marine Ins., Co., 445 F.3d
381, 386-87 (5th Cir. 2006) (holding that insurer suffered prejudice as matter of law
by insured's breach of consent-to-settle provision when insurer was not consulted
about settlement and insurer had no opportunity to participate in or consent to
settlement); see also Liberty Mut. Ins. Co. v. Cruz, 883 S.W.2d 164, 166 (Tex. 1993)
(concluding that insurer had been prejudiced as matter of law by default judgment
entered against insured). (19) Accordingly, we hold that the trial court erred in granting
American and Illinois's summary judgment motion and in denying Maryland's
summary judgment motion.

 The facts here--notice provided only after resolution of the claims--are
significantly different from facts in cases recognizing that an insured's tardy notice
of suit did not defeat coverage because the insurer was not actually prejudiced by the
delay. For example, in PAJ, Inc. v. Hanover Insurance Co., the insured did not notify
its insurer of a suit against it until four to six months after litigation had commenced. 
243 S.W.3d 630, 631 (Tex. 2007). The parties stipulated that the insured, in violation
of the policy, had failed to notify the insurer of the claims "as soon as practicable,"
but the parties also stipulated that the insurer had not been "prejudiced by the
untimely notice." Id. The Texas Supreme Court held that "an insured's failure to
timely notify its insurer of a claim or suit does not defeat coverage if the insurer was
not prejudiced by the delay. (20) Id. at 636-37; see also Coastal Ref. & Mktg., Inc. v.
U.S. Fid. & Guar. Co., 218 S.W.3d 279, 295-96 (Tex. App.--Houston [14th Dist.]
2007, pet. denied) (holding that insurer had produced no evidence that "late notice"
prevented it from investigating suit or assuming control of defense and that insurer
had failed to prove actual prejudice, in part, because insurer "had the option to
participate in settlement negotiations" and could have assumed control of entire
defense); (21) Hanson Prod. Co. v. Ams. Ins. Co., 108 F.3d 627, 629 (5th Cir. 1997)
(holding that, in Texas, insurers cannot prevail on "late notice defense" unless they
are prejudiced). But, as the supreme court has noted, determining whether prejudice
arises from a tardy notice is a different inquiry than determining whether prejudice
arises from a complete lack of notice. See Crocker, 246 S.W.3d at 609 (highlighting
that additional insured's notice in Crocker "was not merely late; it was wholly
lacking"). As in Crocker, the notice here was wholly lacking. Under the
circumstances presented in the instant case, wholly lacking notice, as opposed to
merely late notice, supports a finding of prejudice as a matter of law. See Crocker,
526 F.3d at 241.

 In support of their argument that Maryland was not prejudiced, American and
Illinois also cite Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691 (Tex. 1994). 
Hernandez was killed when a car in which she was riding flipped, and the sole
proximate cause of the accident was the negligence of the car's teenage driver. Id.
at 692. The teenage driver's only asset was a $25,000 liability policy. Id. Hernandez
was also covered by her parents' insurance policy, which included
uninsured/underinsured motorist coverage in the amount of $100,000. Id. 
Hernandez's damages exceeded $125,000, and weeks after the accident, the
Hernandezes, without their insurer's consent, settled with the teenage driver for the
limits of his $25,000 policy. Id. The Hernandezes then sought to recover from their
insurer under the underinsured motorist coverage, but their insurer denied coverage
based upon the Hernandezes' failure to obtain its consent before settling with the
driver. Id. 

 The Hernandezes argued that the settlement-without-consent exclusion was
unenforceable absent the insurer's showing that it was prejudiced. Id. at 692. The
Texas Supreme Court agreed, concluding that "an insurer who is not prejudiced by
an insured's settlement may not deny coverage under an uninsured/underinsured
motorist policy that contains a settlement-without-consent clause." Id. at 693. The
supreme court recognized that "[i]n the context of an underinsured motorist claim,
there may be instances when an insured's settlement without the insurer's consent
prevents the insurer from receiving the anticipated benefit from the insurance
contract; specifically, the settlement may extinguish a valuable subrogation right." 
Id. The supreme court, however, further recognized that, in other instances, "the
insurer may not be deprived of the contract's expected benefit . . . because any
extinguished subrogation right has no value" and, thus, the insured's breach is not
material. Id. The supreme court noted that the Hernandezes' insurer had stipulated
"that it knew of no case in which it ha[d] refused its consent to settle a claim when
an underinsured driver ha[d] tendered the full limits of his or her policy." Id. The
insurer also stipulated that the teenage driver's sole asset was his $25,000 policy. Id. 
Even more significantly, the insurer stipulated that it had not incurred any financial
losses "with regard to its subrogation rights." Id. at 693-94. Applying materiality
principles, and based upon these stipulations, the supreme court concluded that the
insurer "remain[ed] in the same position it would have occupied had the Hernandezes
complied with the settlement-without-consent clause" and, thus, the Hernandezes'
breach was not material and the insurer had not been prejudiced. Id. 

 However, American and Illinois's proposed application of Hernandez to the
instant case stretches too far. The procedural posture of the parties in Hernandez
differs significantly from the procedural posture of the parties in the instant case as
well as the parties in Crocker. Unlike the third-party insurers in Crocker and the
instant case, the first-party insurer in Hernandez was not complaining that it had lost
its right to defend a lawsuit filed against its insured. Rather, the insurer in Hernandez
essentially stipulated that its substantive position had not been changed by the
Hernandezes' conduct. See Hernandez, 875 S.W.2d at 693-94. The facts thus
dictated a different result.

 We sustain that portion of Maryland's second issue in which it argues that the
trial court erred in denying its summary judgment motion and in rendering summary
judgment in favor of American and Illinois because NES failed to comply with the
notice and settlement-without-consent provision of its policy.



 Conclusion


 Having held that Maryland established that it had been prejudiced as a matter
of law by NES's policy violations, we need not consider Maryland's remaining
issues. We reverse the judgment of the trial court, and we render judgment that
American and Illinois, as subrogees of NES, take nothing on their claims against
Maryland.



 Terry Jennings

 Justice


Panel consists of Justices Taft, Jennings, and Bland.
1. 236 S.W.3d 765 (Tex. 2007).
2. Tex. R. Civ. P. 11.
3. American and Illinois also asserted a contractual indemnity claim against Laser, but
the trial court granted summary judgment in favor of Laser on this claim, and
American and Illinois do not challenge this ruling. 
4. American and Illinois also sought the attorney's fees expended in the instant suit
against Maryland.
5. Although Maryland has characterized one of NES's alleged policy violations as
arising from the "voluntary payment" provision of the policy, based on the actual
arguments made by Maryland in its briefing, we refer to this alleged violation as
arising from the settlement-without-consent provision of the policy.
6. Maryland also asserted that American and Illinois did not qualify as an insured under
Maryland's policy. 
7. As noted above, in April 2002, NES filed a third-party petition against Laser in the
Vasquez lawsuit, in which Laser asserted a contractual indemnity claim. At that time,
NES did not assert any claim for insurance coverage nor did it make any claim that
it was an additional insured under Maryland's policy. 
8. Maryland disputes this allegation and contends that NES acquired a copy of the policy
as early as June 2002, before the Vasquez settlement.
9. In support of this argument, American and Illinois argued that Laser had participated
in the Vasquez lawsuit, was active in two depositions taken in the Vasquez lawsuit,
and was "on notice of the proposed mediation in the Vasquez [law]suit, but decided
not to attend the mediation." Nevertheless, it is undisputed that NES never made a
claim that it was entitled to coverage under Maryland's policy as an additional insured
until after the Vasquez lawsuit was fully settled. 
10. In their summary judgment motion, American and Illinois represented that the
settlement agreement, which presumably evidences the settlement amounts, had been
filed with the trial court under seal. However, the settlement agreement does not
appear in the record before us, and there is no other evidence in the record
substantiating the settlement amounts. In fact, other than simply making a general
claim for the "settlement amounts as stated above" and asserting that NES qualified
as an additional insured, American and Illinois did not present any evidence
establishing the amounts that they contended that Maryland was required to pay them
under the Maryland policy for the occurrences at issue. 
11. Maryland, in its motion to modify, appears to agree with the statements in American
and Illinois's petition that American was a primary insurer of NES and that Illinois
was not a primary insurer. However, we note that the parties failed to include
American's and Illinois's policies in the record. 
12. Maryland refers to the notice and settlement-without-consent provisions as conditions
precedent. The supreme court has indicated that these provisions are properly
construed as covenants and not conditions precedent, and we will analyze them as
such. See PAJ, Inc. v. Hanover Ins. Co., 243 S.W.3d 630, 636 (Tex. 2008) (stating
that "[c]onditions are not favored in the law" and that "when another reasonable
reading that would avoid a forfeiture is available, [a court] must construe contract
language as a covenant rather than a condition"). 
13. Crocker v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 466 F.3d 347 (5th Cir. 2006).
14. The supreme court did not consider the second question certified by the Fifth Circuit
because it was conditioned on an affirmative answer to the first certified question. 
Nat'l Union Fire Insur. Co. of Pittsburgh, Pa. v. Crocker, 246 S.W.3d 603, 608 n.30 
(Tex. 2008).
15. The supreme court explained that "the requirement that an additional insured provide
notice that it has been served with process . . . lets the insurer know that the insured
is subject to default and expects the insurer to interpose a defense." Id. at 609-10. 
The court further explained, 


An insurer cannot necessarily assume that an additional insured who
has been served but has not given notice to the insurer is looking to the
insurer to provide a defense. Potential insureds, for a variety of
reasons, might well opt against seeking a defense from an insurer. For
example, an additional insured may opt against invoking coverage
because it wants to hire its own counsel and control its own defense. 

 Id. at 610. 
16. Maryland had actual knowledge of suit being brought against NES, but Maryland
disputed below whether NES did, in fact, qualify as an additional insured.
17. We recognize that in Crocker the insurer sought to avoid coverage for a default
judgment entered against its additional insured, whereas in this case Maryland seeks
to avoid coverage for a settlement payment made by its additional insured that the
parties represent was later made the subject of an agreed judgment. 
18. The supreme court's opinion was provided in response to the Fifth Circuit's question
asking whether the insurer's actual knowledge of the suit against its additional insured
established "the absence of prejudice" to the insurer as a matter of law. Crocker, 246
S.W.3d at 609-10. Thus, although the supreme court stated that the facts "did not
establish a lack of prejudice as a matter of law," we read the supreme court's Crocker
opinion to support the Fifth Circuit's interpretation that the insurer, on those facts,
established that it had been prejudiced as a matter of law. Id. 


 In their appellate briefing, American and Illinois argue that Texas case law rejects the
concept of prejudice as a matter of law and further argue that Maryland did not
present any evidence that it had actually been prejudiced. However, Crocker indicates
that an insurer can establish that it has been prejudiced as a matter of law based upon
the factual circumstances presented. For example, in Crocker, the supreme court
specifically stated that "[a]bsent a threshold duty to defend, there [could] be no
liability" to the additional insured employee or to the underlying plaintiff derivatively.
Id. at 609. Accordingly, we must reject American and Illinois's suggestion that, in
order to establish prejudice, Maryland had to introduce evidence specifically
challenging the amount of the settlement or the quality of NES's defense in the
Vasquez lawsuit. 
19. We note that in Liberty Mutual Insurance Co. v. Cruz, the Texas Supreme Court
stated that "an insurer that is not notified of suit against its insured until a default
judgment has become final, absent actual knowledge of the suit, is prejudiced as a
matter of law." 883 S.W.2d 164, 166 (Tex. 1993) (emphasis added). The supreme
court in Crocker did not address this passage in Cruz, which could be interpreted to
suggest that an insurer who has actual knowledge of suit against its insured cannot
show prejudice as a matter of law. However, the more recent supreme court opinion
in Crocker indicates that, even with actual knowledge of a suit pending against its
additional insured, an insurer may establish that it has been prejudiced as a matter of
law when its additional insured has violated the policy by wholly failing to provide
the insurer with notice that the insured has been sued and expects a defense and
coverage and has settled the case without the insurer's knowledge or consent. 
20. In Crocker, which was issued on the same day as PAJ, the supreme court explained
the distinction between the two cases as follows:


Recently, in PAJ, Inc. v. Hanover Insurance Co., we held that tardy
notice of a covered claim will not defeat coverage unless the insurer
was actually prejudiced by the delay. The issue in PAJ was whether a
named insured's untimely compliance with the notice-of-suit provision
is excused if the delay inflicts no prejudice on the insurer. There are
fundamental differences, however, between PAJ and today's case: in
PAJ, the named insured made a request for coverage under the policy,
albeit several months after "as soon as [was] practicable." In the
pending case, however, the additional insured's notice was not merely
late; it was wholly lacking. PAJ's notice was tardy; [the additional
insured employee's notice] was nonexistent. 

 

 Crocker, 246 S.W.3d at 609. 
21. In Coastal Refining & Marketing, Inc. v. United States Fidelity and Guaranty Co., our
sister court stated that whether an insurer is prejudiced by "delayed notice is generally
a question of fact." 218 S.W.3d 279, 287 (Tex. App.--Houston [14th Dist.] 2007,
pet. denied). However, our sister court went on to recognize that prejudice from
delayed notice may sometimes be established as a matter of law. Id. at 287-88. For
example, the court stated that "[e]ntry of a default judgment will ordinarily constitute
prejudice as a matter of law." Id. at 287. The court explained that the substantive
change in position for an insurer caused by a default judgment generally renders a
default judgment prejudicial because "[b]efore default judgment, an insurer can
escape liability for a covered claim if the plaintiff fails to meet its burden of proof,"
whereas "[a]fter a default judgment, . . . an insurer can no longer defend against the
underlying claim unless it first meets a new burden of proof on new issues." Id. at
288. The court also specifically stated that it was not "foreclos[ing] the possibility
that an insurer could be prejudiced by events other than default judgment." Id. at
287-88. For the same reasons an insurer is prejudiced by a default judgment, when
an additional insured settles a third-party claim made against it without ever notifying
its insurer of the claim, the insurer would also generally seem to suffer a substantive
change in position and thus be prejudiced. Id. at 296. Our sister court appeared to
specifically recognize prejudice arising under these circumstances when it stated,
"[N]or do we imply that an insurer cannot be excused from the duty to indemnify its
insured or the insured's subrogees for the costs of a settlement made without the
insurer's consent if the only prejudice shown is non-monetary." Id.; But see Lennar
Corp. v. Great Am. Ins. Co., 200 S.W.3d 651, 690 (Tex. App.--Houston [14th Dist.]
2006, pet. denied) (rejecting argument that insurer was prejudiced as matter of law by
insured's settlement of third-party claims made against it before notifying insurer).