NATIONAL UNION FIRE INSUR-
ANCE COMPANY of Pitts-
burgh, PA, Appellant,

v.

Beatrice CROCKER, Appellee.

No. 06–0868.

Supreme Court of Texas.

Argued Jan. 25, 2007.

Opinion Delivered Feb. 15, 2008.

Rehearing Denied April 4, 2008.

Thomas C. Wright, Harrison H. Yoss, John Sepehri, Michael A. Choyke, for Appellant.

Thomas Joseph O'Meara, Jamie Renee Critchfield Peterson, William C. Schmidt, for Appellee.

Justice WILLETT delivered the opinion of the Court.

This insurance-coverage case comes to us on certified questions from the United States Court of Appeals for the Fifth Circuit.[1] The principal issue is whether an insurer has a duty to notify an additional insured[2] of available liability coverage. On the facts presented, we conclude that Texas law imposes no such extra-contractual duty. We further hold that an insurer's actual knowledge that an additional insured has been served with process does not establish as a matter of law that the insurer has not been prejudiced by the additional insured's failure to notify the insurer of the receipt of process.

## I. Background

Beatrice Crocker was a resident of Redwood Springs Nursing Home, which is owned by Emeritus Corporation. She filed suit in state court against Emeritus and Richard Morris, a nursing home employee, seeking compensation for injuries suffered when she was hit by a door swung open by Morris.[3] Crocker's claims against Emeritus were covered by a commercial general liability policy issued by National Union Fire Insurance Company of Pittsburgh, PA. Because Morris was acting within the course and scope of his employment when the accident occurred, he qualified as an additional insured under the policy.[4] National Union defended Emeritus, the named insured, but did not defend

1. See TEX.R.APP. P. 58.1 (authorizing this Court to hear certified questions from any federal appellate court).

2. The "additional insured" in this case might more properly be referred to as an "omnibus insured"; however, we use the term "additional insured" to conform our writing to the questions posed by the Fifth Circuit and that court's helpful analysis of the issues before us.

3. The nursing home terminated Morris's employment shortly after this incident and be-

fore Crocker filed her lawsuit. *Crocker v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 466 F.3d 347, 349 n. 2 (5th Cir.2006).

4. The policy provides: "You or your means the individual, partnership, or corporation designated as Named Insured in Item 1 of the Declarations, including any present or former employee ... solely while acting in his or her capacity as such."

Morris even though the claims against him were covered by the policy and National Union knew he was a named defendant that had been served. As the Fifth Circuit points out, "Morris was not aware of the terms and conditions of the Emeritus policy [and] did not know that he was an additional insured under the policy."[5] National Union did not inform Morris that he was an insured, nor did it offer to defend him. Morris was served, but he "did not forward the suit papers to National Union or otherwise inform it that he had been sued, and did not request a defense from either National Union or Emeritus."[6] Morris never answered the suit and did not appear at trial. National Union attempted to contact Morris about Crocker's claims, both before and after Crocker filed her lawsuit, but to no avail—the certified mail was returned, and the repeated phone messages were not returned. Morris spoke privately with Crocker's attorney at a deposition, but Morris refused to speak in private with Emeritus's counsel.

After the evidence was presented, the state trial court granted Crocker's motion to sever the claims against Morris. The claims against Emeritus were submitted to the jury, which returned a take-nothing verdict, finding that Emeritus, acting "by and through its agents acting within the course and scope of their employment," including Morris, was not negligent. A few days later, however, the trial court entered a $1 million default judgment against Morris on the severed claims.[7]

Crocker sued National Union to collect the judgment, asserting she was a third-party beneficiary to the policy. National Union removed the case to federal court, and both parties moved for summary judg-

ment. National Union argued that Morris never triggered the duty to defend because he failed to forward the suit papers or otherwise notify National Union that he had been sued and he did not ask National Union to provide a defense. The policy provides:

> Before coverage will apply, you must notify us as soon as possible of an occurrence or offense which may result in a claim or suit against you.
>
> Notice should include:
>
> - How, when and where the occurrence or offense took place;
> - Names and addresses of any witnesses and injured people;
> - Nature and location of any injury or damage.
>
> Before coverage will apply, you must notify us in writing of any claim or suit against you as soon as possible. You must:
>
> - immediately record the specifics of the claim and the date you received it;
> - send us copies of all demands, suit papers or other legal documents you receive, as soon as possible.

National Union contends that, because Morris failed to comply with the notice provisions, he did not invoke coverage or the right to a defense under the policy, meaning that Crocker, who now purports to stand in Morris's shoes, cannot collect under the policy either.

Crocker responds that even though Morris did not comply with the notice-of-suit provision, National Union had actual knowledge of Crocker's suit, and hence was not prejudiced by Morris's failure to forward the suit papers. Crocker con-

---

5. *Crocker,* 466 F.3d at 349.

6. *Id.*

7. Crocker contends that the trial court actually granted the default judgment against Morris from the bench before the case was submitted to the jury.

tends that National Union's actual knowledge of the suit coupled with its failure to notify Morris that he was covered amounted to a breach of its duty to defend Morris, thus making National Union liable to Crocker for the full $1 million default judgment.

The federal district court agreed with Crocker, concluding that Texas law required National Union to show prejudice in order to establish a notice-based policy defense. The court also found that National Union breached a duty to defend Morris by failing to notify Morris that it would defend him. Therefore, the court granted summary judgment in favor of Crocker and awarded her $1 million. National Union appealed to the Fifth Circuit, which certified three questions to us.

## II. Discussion

### A. First Certified Question

■ The Fifth Circuit first asks:

Where an additional insured does not and cannot be presumed to know of coverage under an insurer's liability policy, does an insurer that has knowledge that a suit implicating policy coverage has been filed against its additional insured have a duty to inform the additional insured of the available coverage? [8]

We answer the question, no.[9]

■ Insurance policies are written contracts, and, as with other contracts, we interpret and enforce them according to

settled rules of construction.[10] Most importantly, we must give the policy's words their plain meaning,[11] without inserting additional provisions into the contract.[12]

Our 1978 decision in *Weaver v. Hartford Accident & Indemnity Co.* governs today's case.[13] In *Weaver,* we held that an insurer was not liable to an additional insured's judgment creditor when the additional insured failed to notify the insurer that he had been served with process, even though the insurer knew about the suit, and the additional insured knew nothing about the policy.[14] Weaver sued Hartford, an insurer, to recover under an automobile liability policy on the basis of a default judgment obtained against an additional insured. Hartford had issued the policy naming J.C. Thomas Enterprises as the insured. The policy defined "insured" to include any person using a vehicle owned by Thomas Enterprises with its permission. One of Thomas Enterprises's employees, while driving a company vehicle, had an accident with Weaver.

Weaver sued the employee and later added Thomas Enterprises as a co-defendant. Thomas Enterprises notified its insurer of the suit, and an answer was filed on its behalf, denying that the employee had permission to use the vehicle. During the insurer's investigation of the accident, the employee told the insurer that he did not have permission to use the vehicle at the time of the accident. He also acknowledged that he never notified Hartford of the lawsuit, filed an answer, or had an

---

**8.** *Id.* at 359.

**9.** The Fifth Circuit certified three questions to us. We answer the first and third questions but need not address the second question given our "no" answer to the first.

**10.** *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex.2003).

**11.** *Puckett v. U.S. Fire Ins.* Co., 678 S.W.2d 936, 938 (Tex.1984).

**12.** *See Fortis Benefits v. Cantu,* 234 S.W.3d 642, 649 (Tex.2007).

**13.** 570 S.W.2d 367 (Tex.1978).

**14.** *Id.* at 368, 370 (Greenhill, C.J., dissenting).

answer filed on his behalf. Weaver nonsuited Thomas Enterprises and was granted a default judgment against the employee.[15]

After winning the judgment, Weaver sued Hartford to collect under the policy as a third-party beneficiary, alleging that Thomas Enterprises gave its employee permission to drive the vehicle. Despite the employee's previous statement that he did not have permission to drive the vehicle, the jury found that he was an additional insured. The policy provided that an insured's failure to forward suit papers to Hartford relieved it of any liability to an injured third party, but the trial court entered judgment in favor of Weaver.[16]

On appeal, we held that the liability insurer had no duty to volunteer to defend the additional insured.[17] We noted that one purpose served by the insured's obligation to forward suit papers "is to enable the insurer to control the litigation and interpose a defense."[18] We emphasized, however, that "a more basic purpose is to advise the insurer that an insured has been served with process and that the insurer is expected to timely file an answer."[19] Under *Weaver*, an insurer's knowledge that a suit has been filed against an additional insured does not satisfy this "more basic purpose" or require the insurer to "gratuitously subject[ ] itself to liability."[20] The insured's ignorance of any rights or obligations under the policy did not affect our analysis in that case. Put simply, there is no duty to provide a defense absent a request for coverage.

■ The similarities between this case and *Weaver* abound. First, both Morris and the employee in *Weaver* were additional insureds under the liability policies at issue.[21] Second, the injured party in each case sued both the named insured and the additional insured but did not recover anything from the named insured.[22] Third, both additional insureds failed to forward suit papers to the insurers, so neither was defended by the insurer.[23] Fourth, both additional insureds lacked knowledge of the existence of the employers' liability policies and the notice-of-suit provisions.[24] Fifth, both insurers argued that they had no duty to inform the addi-

**15.** *Id.* at 368.

**16.** *Id.* at 368–69.

**17.** *Id.* at 370.

**18.** *Id.* at 369.

**19.** *Id.*

**20.** *Id.* at 370.

**21.** *Crocker v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 466 F.3d 347, 349 (5th Cir. 2006); *Weaver*, 570 S.W.2d at 368 & n. 1.

**22.** *Crocker*, 466 F.3d at 348; *Weaver*, 570 S.W.2d at 368. One ancillary point merits attention here. The jury rejected Crocker's claim against the nursing home because the jury refused to find Morris's actions negligent. Given the wording of the charge—which asked whether Emeritus had acted negligently "by and through its agents acting within the course and scope of their employment"—the jury's "no negligence" finding as to Emeritus, based on Morris' alleged misconduct, necessarily indicates it would have similarly concluded "no negligence" if asked about Morris himself. Stated differently, the alleged misconduct discussed at trial was Morris's. His actions were litigated notwithstanding his absence, and the jury granted a complete victory to the defense. Accordingly, the jury's findings are directly contrary to the default judgment entered against Morris on the severed claims.

**23.** *Crocker*, 466 F.3d at 349; *Weaver*, 570 S.W.2d at 368. Both insurers defended the named insureds, who did comply with the respective notice-of-suit provisions.

**24.** *Crocker*, 466 F.3d at 349; *Weaver*, 570 S.W.2d at 370 (Greenhill, C.J., dissenting).

tional insured of the possibility of coverage.[25] While in *Weaver* we did not directly address the additional insured's ignorance of the policy, we nevertheless held that the insurer had no duty to inject itself gratuitously into a lawsuit by defending an additional insured who had not requested a defense and who failed to comply with the policy's forwarding conditions.[26]

We unanimously reaffirmed this holding several years later in *Harwell v. State Farm Mutual Automobile Insurance Co.*, where we said that the insurer did not have to "gratuitously subject[ ] itself to liability," until Harwell, the administrator of the estate of an additional insured, fulfilled her duty to notify the insurer of service of the suit against her.[27] We confirmed that *Weaver* remained the governing law and reaffirmed that "[o]ne of the purposes of a notice of suit provision in an insurance policy is to notify the insurer that the insured has been served with process and that the insurer is expected to defend the suit."[28]

■ Both *Weaver* and *Harwell* turn on the recognition that notice and delivery-of-suit-papers provisions in insurance policies serve two essential purposes: (1) they facilitate a timely and effective defense of the claim against the insured, and more fundamentally, (2) they trigger the insurer's duty to defend by notifying the insurer that a defense is expected. Mere awareness of a claim or suit does not impose a duty on the insurer to defend under the policy; there is no unilateral duty to act unless and until the additional insured first *requests* a defense—a threshold duty that the insured fulfills under the policy by notifying the insurer that the insured has been served with process and the insurer is expected to answer on its behalf. In both cases, we declined to subject the insurer to liability for failing to perform " 'the sentry duty of tracking back and forth to the court house to keep a check on if or when ... [the insured] may be served with process.' "[29] Of course, an insurer that is aware an additional insured has been sued may, and perhaps should, choose to inform the insured that a defense is available; in this case, had National Union done so, a judgment against Morris and years of subsequent litigation would have been avoided. But an insurer that has not been notified that a defense is expected bears no extra-contractual duty to provide notice that a defense is available to an additional insured who has not requested one. The answer to the first certified question is, therefore, no.

## B. Third Certified Question[30]

■ The Fifth Circuit questions *Weaver's* applicability to this suit because of "changes in Texas insurance law" over the

---

25. *Crocker*, 466 F.3d at 350–51; *Weaver*, 570 S.W.2d at 373 (McGee, J., dissenting).

26. *Weaver*, 570 S.W.2d at 370.

27. 896 S.W.2d 170, 172, 174 (Tex.1995).

28. *Id.* at 173 (citing *Weaver*, 570 S.W.2d at 369).

29. *Id.* (alteration in original) (citing *Weaver*, 570 S.W.2d at 369 and quoting *Campbell v. Cont'l Cas. Co.*, 170 F.2d 669, 671 (8th Cir. 1948)).

30. The second question asks:

   If the above question is answered in the affirmative, what is the extent or proper measure of the insurer's duty to inform the additional insured, and what is the extent or measure of any duty on the part of the additional insured to cooperate with the insurer up to the point he is informed of the policy provisions?

   *Crocker*, 466 F.3d at 359. We do not address this question because it is conditioned on an affirmative answer to the first question.

years,[31] including a mandatory endorsement issued by the Texas Board of Insurance (now the Texas Department of Insurance), which requires a showing of prejudice in certain suits before an insurer may use "late notice" to deny coverage.[32] The Fifth Circuit's third certified question asks us:

> Does proof of an insurer's actual knowledge of service of process in a suit against its additional insured, when such knowledge is obtained in sufficient time to provide a defense for the insured, establish as a matter of law the absence of prejudice to the insurer from the additional insured's failure to comply with the notice-of-suit provisions of the policy?[33]

We also answer this question, no.

■ National Union was obviously prejudiced in the sense that it was exposed to a $1 million judgment. The question, however, is not whether National Union suffered exposure to a financial risk, but whether it should be estopped to deny coverage because it was aware that Morris had been sued and served and had ample time to defend him. The answer must be "no" based on the discussion above—National Union had no duty to notify Morris of coverage and no duty to defend Morris until Morris notified National Union that he had been served with process and expected National Union to answer on his behalf. "Because [National Union] was not under a duty to defend the suit against its insured when [it received notice of the claim], it is not estopped from asserting [the insured's] breach of the policy as a bar to its liability."[34] Absent a threshold duty to defend, there can be no liability to Morris, or to Crocker derivatively.

Recently, in *PAJ, Inc. v. Hanover Insurance Co.*, we held that tardy notice of a covered claim will not defeat coverage unless the insurer was actually prejudiced by the delay.[35] The issue in *PAJ* was whether a named insured's untimely compliance with the notice-of-suit provision is excused if the delay inflicts no prejudice on the insurer. There are fundamental differences, however, between *PAJ* and today's case: in *PAJ*, the named insured made a request for coverage under the policy, albeit several months after "as soon as [was] practicable." In the pending case, however, the additional insured's notice was not merely late; it was wholly lacking. PAJ's notice was tardy; Morris's was nonexistent.

More importantly, as we have said, the requirement that an additional insured provide notice that it has been served with process is driven by a purpose distinct from the purpose underlying the requirement for notice of a claim or occurrence. Notice of service of process lets the insurer know that the insured is subject to default and expects the insurer to inter-

---

31. *Id.* at 354.

32. *Id.* The endorsement reads:
   As respects *bodily injury* liability coverage and *property damage* liability coverage, unless the company is prejudiced by the *insured's* failure to comply with the requirement, any provision of this policy requiring the *insured* to give notice of action, *occurrence* or loss, or requiring the *insured* to forward demands, notices, summons or other legal process, shall not bar liability under this policy.

State Bd. of Ins., *Revision of Texas Standard Provision for General Liability Policies— Amendatory Endorsement–Notice*, Order No. 23080 (Mar. 13, 1973), *available at* http://www.tdi.state.tx.us/commercial/pcck23080.html.

33. *Crocker*, 466 F.3d at 359.

34. *Harwell*, 896 S.W.2d at 175.

35. 243 S.W.3d 630 (Tex.2007).

pose a defense. An insurer cannot necessarily assume that an additional insured who has been served but has not given notice to the insurer is looking to the insurer to provide a defense. Potential insureds, for a variety of reasons, might well opt against seeking a defense from an insurer. For example, an additional insured may opt against invoking coverage because it wants to hire its own counsel and control its own defense. Indeed, Emeritus's counsel believed that Morris had done just that in this case. Counsel for Emeritus testified that he had asked Morris before his deposition if he could speak to him and Morris "refused on the basis that he was waiting for a call from his attorney. [Emeritus's counsel] assumed that [Morris] had an attorney and did not want to talk to [Emeritus's counsel] on that basis." [36]

As explained above, despite its actual knowledge of a covered suit against and service of process on Morris, National Union did not incur a duty to inform Morris of available coverage or his entitlement to a defense or to sua sponte provide one without any indication from Morris, either explicit or implicit, that he wanted or expected to be defended. Neither TDI's 1973 endorsement, nor our recent decision in *PAJ*, nor any other changes to Texas law since *Weaver* alter that conclusion.

### III. Conclusion

■ Insurers owe no duty to provide an unsought, uninvited, unrequested, unsolicited defense. Consistent with our decision in *Weaver*, we decline to impose an extra-contractual duty on liability insurers that would force them to keep track of potential litigants who may or may not be additional insureds, may or may not be entitled to coverage, and may or may not expect a defense to a claim. Accordingly, because

insurers need not provide coverage to additional insureds who never seek it, National Union had no duty either to inform Morris of available coverage or to voluntarily undertake a defense for him, and its actual knowledge did not establish lack of prejudice as a matter of law.

---

**36.** *Crocker,* 466 F.3d at 350.