# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 29, 2014

Lyle W. Cayce
Clerk

No. 12-20344

MISTY R. BLANTON, individually and doing business as Field Service
Industries; ROBERT D. BLANTON, individually and doing business as Field
Service Industries,

Plaintiffs – Appellants

v.

CONTINENTAL INSURANCE COMPANY,

Defendant – Third Party Plaintiff –
Appellee

v.

ROBERT R. EISELE, JR.; ROBERT PETER EISELE,

Third Party Defendants –
Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-2169

Before KING, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 12-20344

Misty and Robert Blanton, doing business as Field Service Industries, appeal the judgment of the district court in favor of Continental Insurance Company in this insurance dispute.  The district court held that Continental Insurance Company had no duty to defend Field Service Industries in a lawsuit arising out of its installation of and subsequent repairs to engines in a marine vessel because the underlying claims fell within the contractual liability exclusions to the insurance policy.  We affirm the judgment of the district court on alternative grounds.

## I.      Factual and Procedural Background

On June 16, 2006, Plaintiffs-Appellants Misty and Robert Blanton, doing business as Field Service Industries (collectively "FSI"), installed two diesel engines into the *Betty L*, a motor vessel owned by J.A.M. Marine Services, L.L.C. ("J.A.M.").  J.A.M. uses the *Betty L* to supply offshore drilling, shipping, and ocean vessels with lubricants and fuel via barge or tug deliveries.  At the time of the installation, FSI was an authorized engine dealer for Alaska Diesel.  Less than a year after installation of the engines on the *Betty L*, the engines experienced mechanical problems.  In May and June 2007, FSI performed diagnostic and repair work on both engines.  According to J.A.M., FSI performed the initial diagnostic work and repairs in a substandard manner, necessitating additional repairs.  One of the engines ultimately had to be replaced, rendering the *Betty L* out of service for over a month.

J.A.M. brought suit in state court alleging negligence and breach of contract claims against Alaska Diesel, FSI, and FSI's owners, the Blantons and Robert R. Eisele, Jr. and Robert Peter Eisele ("Eiseles").[1]

---

[1] The Eiseles purchased FSI during the course of the repair work in 2007, but they were not owners when FSI first installed the engines in the *Betty L* in 2006.  In state court, J.A.M. alleged that the Blantons are liable for negligence and breach of contract associated with the installation of the engines, and that the Blantons and Eiseles are liable for

No. 12-20344

FSI had a Marine Services Liability Policy with Continental Insurance Company ("Continental") that included Commercial General Liability ("CGL") coverage and Ship Repairer's Liability ("SRL") coverage. The policy period was from August 15, 2006, to August 15, 2007, which is after the installation of the engines on the *Betty L,* but includes FSI's later repair work. After being served with J.A.M.'s lawsuit, FSI sought a defense from Continental under the Policy, but Continental denied coverage. FSI responded by filing this breach of insurance contract action in state court, seeking a judgment that Continental owed a duty to defend FSI. Continental removed this action to federal court and joined the Eiseles.

The underlying lawsuit between J.A.M. and FSI settled, leaving only the issue of whether Continental had a duty to defend FSI. The parties filed cross motions for summary judgment, and the district court granted summary judgment in favor of Continental. The district court held Continental had no duty to defend FSI in the underlying action due to the presence of "contractual liability" exclusions contained in both the CGL and SRL portions of the Policy. FSI appealed, arguing that the district court erred by holding that the contractual liability exclusions precluded coverage. Continental asserted that the district court did not err, and, even if it had, other exclusions contained in the Policy apply to FSI's claims. Additionally, Continental contends that if it owes a duty to defend the Blantons, that duty does not extend to the Eiseles.

After FSI filed its appeal, we certified a similar question of Texas insurance law regarding contractual liability exclusions to the Supreme Court of Texas. *See Ewing Constr. Co. v. Amerisure Ins. Co.*, 690 F.3d 628, 633 (5th

---

negligence and breach of contract with respect to the diagnosis and repair of the engines after they were installed.

No. 12-20344

Cir. 2012).[2]  We placed this case in abeyance pending the Texas Supreme Court's answer.  On January 17, 2014, the Texas Supreme Court held that an insured's express agreement to perform construction in a good and workmanlike manner did not enlarge its obligations and was not an "'assumption of liability' within the meaning of the policy's contractual liability exclusion." *Ewing Const. Co., Inc. v. Amerisure Ins. Co. ("Ewing II")*, 420 S.W. 3d 30, 36 (Tex. 2014).  Following the decision in *Ewing II,* Continental, in a letter brief to the court, conceded that the contractual liability provisions in the CGL and SRL do not apply to FSI's claims.  However, Continental maintains that several other exclusions contained in both the CGL and SRL portions of the Policy preclude coverage.

## II.    Standard of Review

This court reviews rulings on summary judgment de novo, applying the same standards as the district court.  *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 679 (5th Cir. 2011).  Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  *Id.*  This court may affirm the district court's

---

[2]  The certified questions were:

1.  Does a general contractor that enters into a contract in which it agrees to perform its construction work in a good and workmanlike manner, without more specific provisions enlarging this obligation, "assume liability" for damages arising out of the contractor's defective work so as to trigger the Contractual Liability Exclusion[?]

2.  If the answer to question one is "Yes" and the contractual liability exclusion is triggered, do the allegations in the underlying lawsuit alleging that the contractor violated its common law duty to perform the contract in a careful, workmanlike, and non-negligent manner fall within the exception to the contractual liability exclusion for "liability that would exist in the absence of contract[?]"

*Ewing*, 690 F.3d at 633.

grant of summary judgment "if it is sustainable on any legal ground in the record, and it may be affirmed on grounds rejected or not stated by the district court." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 537–38 (5th Cir. 2003) (internal citation omitted).

### III.   Duty to Defend

On appeal, FSI alleges that it is entitled to a defense under the CGL and the SRL Policy provisions for the following allegations in J.A.M.'s underlying petition: (1) loss of use of the *Betty L* resulting from FSI's negligent installation of the engines; (2) loss of use of the *Betty L* resulting from FSI's negligence in performing diagnostic work and/or repairs on the engines; (3) damage to J.A.M.'s property resulting from FSI's negligent installation of the engines; and (4) damage to J.A.M.'s property resulting from FSI's negligence in performing diagnostic work and repairs on the engines.  Continental counters that CGL and SRL coverage pertains only to situations in which FSI's work causes damage to property not produced by or worked on by FSI, and since J.A.M.'s underlying petition is based on damage to engines installed and repaired by FSI, there is no CGL or SRL coverage.  Continental points to several exclusions to CGL and SRL coverage in support of its assertion that it owes no duty to defend.  We consider each of the four claims in turn and explain how each falls within an exclusion to both the CGL and SRL portions of the Policy.  Because we agree that the Policy does not cover these claims, we need not reach the parties' arguments concerning the application of the Policy to the Eiseles.

### A. Relevant Law

In this diversity action, Texas substantive law applies as interpreted by Texas state courts. *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011).   Under Texas law, whether an insurance carrier owes a duty to defend under an insurance policy is a purely legal question.  *Koenig v. First*

*Am. Title Ins. Co. of Tex.*, 209 S.W.3d 870, 873 (Tex. App.—Houston [14th Dist.] 2006, no pet.). "In determining a duty to defend, we follow the eight-corners rule, also known as the complaint-allegation rule: 'an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations.'" *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)). All doubts regarding the duty to defend are resolved in favor of the duty. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

"Initially, the insured has the burden of establishing coverage under the terms of the policy." *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). If the insured proves that the claim is covered, the insurer must prove the loss is within an exclusion in order to avoid liability. *Id.* If the insurer establishes the applicability of an exclusion, the burden shifts back to the insured to prove coverage under an exception to the exclusion. *Id.* However, "[o]nce coverage has been found for any portion of a suit, an insurer must defend the entire suit." *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied).

In assessing the scope of coverage provided by an insurance policy, we interpret the policy as a written contract, according to settled rules of contract construction. *See Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008). This includes giving the policy's terms their plain meaning. *Id.* A term of the policy is considered ambiguous when it is "susceptible to two or more reasonable interpretations." *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 859 (5th Cir. 2006) (citations omitted). However, "an ambiguity does not exist simply because the parties interpret a policy differently. If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Gilbert*, 327 S.W.3d at

No. 12-20344

133 (citations omitted). When a term is subject to more than one reasonable construction, we interpret the term in favor of coverage. *Id.*

**B. Claims and Exclusions**

   1. <u>Loss of use of the *Betty L* resulting from FSI's negligent installation of the engines.</u>

Claim One is based on J.A.M.'s allegations that it lost the use of the *Betty L* from May 14 to 17, 2007, due to the failure of the port engine, which had been installed and placed into service by FSI ten months prior to its failure. J.A.M. also claimed that it lost the use of the vessel due to the failure of the starboard engine shortly thereafter. FSI alleges that this claim is covered by the CGL portion of the Policy.[3] However, Continental denies that there is coverage under Exclusion "m."[4]

The CGL portion of the Policy states that Continental has "no duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply." Exclusion "m" specifically precludes coverage for:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> > (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

---

[3] Although both engines were installed prior to the beginning of the policy period, FSI argues that under the actual injury rule, the claim is still covered by the Policy because the "property damage" occurred during the policy period. *See, e.g.*, *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 25–26 (Tex. 2008) (adopting the "actual injury" rule in which "the insurer must defend any claim of physical property damage that occurred during the policy term"). Continental does not rebut this argument, so we accept that Claim One occurred during the policy period.

[4] For all four claims, Continental argues that coverage is barred under a number of exclusions to the CGL and SRL portions of the Policy. Since only one exclusion need apply to each claim, we decline to address the application of all possible exclusions.

No. 12-20344

> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The Policy provides relevant definitions that clarify the meaning of this exclusion. "Property damage" includes:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or,

> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Impaired property" means "tangible property, other than 'your product' or 'your work', that cannot be used or is less useful because . . . [i]t incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous[.]" Further, the Policy defines "your work" as "[w]ork or operations performed by you or on your behalf; and . . . [m]aterials, parts or equipment furnished in connection with such work or operations." "Your product" pertains to "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . You[.]"

Thus, in light of these definitions, Exclusion "m" to the CGL portion of the Policy precludes coverage for the loss of use to tangible property that cannot be used because it incorporates FSI's defective product or work. However, this exclusion does not apply if the loss of use arises out of a sudden or accidental injury to FSI's product or work. Here, Claim One appears to fall within Exclusion "m" since J.A.M. alleged that the loss of use of the *Betty L* was due to FSI's substandard installation of the engines. However, FSI challenges the application of this exclusion, invoking the exception for sudden

and accidental damage.  Continental counters that nothing in J.A.M.'s pleadings indicate that the loss of use of the *Betty L* was the result of sudden or accidental damage to the engines.  Under the eight-corners rule, we turn to J.A.M.'s allegations in its state court petitions to resolve this matter.  *Zurich*, 268 S.W.3d at 491.

J.A.M. filed four petitions alleging claims against FSI in state court. Continental argues that none of the language in the four petitions supports FSI's position that the loss of use to the *Betty L* was the result of sudden or accidental damage to the engines.  In J.A.M.'s first petition, it states that in 2006 it purchased the two engines and that on June 16, 2006, FSI, as an authorized dealer of those engines, installed both of them in the *Betty L*. Approximately ten months later, the port engine began to "push water used to cool the engine out of the day tank."  J.A.M. contacted FSI and scheduled repair work three days later.  FSI technicians performed diagnostic testing on the engine, but they only discovered an oil leak and replaced two different gaskets. After the technicians left, a separate injector "O" ring began leaking.  The vessel was returned to operation, but engine water continued to "push out of the day tank."

Less than a week later, the starboard engine developed a similar problem whereby it "began to push its engine cooling water out of the day tank."  An FSI technician responded the next day and determined that the starboard engine's head gasket needed to be replaced.  Service was scheduled for June 7, 2007, and FSI expected that the replacement would take four hours.  However, the repair lasted four days "due to substandard work performed by [FSI's] technicians[,] which created additional problems requiring repair."

The narratives contained in the Second, Third, and Fourth Amended Petitions are substantially similar.  Even when reading the pleadings liberally, *see King*, 85 S.W.3d at 187, it is clear that the engines did not suddenly cease

to function. Rather, J.A.M. alleged that the loss of use of the *Betty L* was the culmination of several problems beginning with the negligent installation of the engines in June 2006, and continuing with a series of repairs made to the engines for various problems in May and June 2007. Thus, Exclusion "m" to the CGL coverage applies to this claim.

> ### 2. Loss of use of the *Betty L* resulting from FSI's negligence in performing diagnostic work and repairs of the engines.

J.A.M.'s petition made the following allegations which form the basis of FSI's second claim: (1) loss of use of the *Betty L* due to the failure of the starboard engine less than one week after the port engine had been diagnosed, repaired, and put back to use during May 2007; (2) loss of use of the vessel during the repair period that was extended from four hours to four days in June 2007 due to FSI's negligence and substandard work; and (3) loss of use of the vessel beginning on June 26, 2007, when the starboard engine failed after having been reinstalled and placed into operation the day before. FSI seeks coverage under both the CGL and the SRL portions of the Policy for (1) and (3), and only under the SRL for (2). Continental argues that Exclusion "m" precludes CGL coverage and Exclusion "e" precludes SRL coverage.[5]

As previously explained, Exclusion "m" to the CGL coverage precludes coverage for the loss of use to physical property that cannot be used because it

---

[5] The SRL provision only applies to damage or physical loss that occurs while the vessel is in FSI's "care, custody or control." Continental argues that there can be no SRL coverage for Claim Two since J.A.M.'s state court petitions do not allege that the *Betty L* was in FSI's care, custody, or control during the course of the May and June 2007 repairs and diagnostic work. FSI relies on *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 371 (5th Cir. 2008), to argue that, under Texas law, when there is ambiguity in the underlying pleadings as to which party maintains care, custody, or control of the vessel, the court should liberally construe the pleadings in favor of the insured. J.A.M.'s pleadings are silent as to whether the *Betty L* was in FSI's care, custody, or control during the course of the repair work in 2007. This omission creates ambiguity in the pleadings, and because we must construe any ambiguity in FSI's favor, *see Gilbert*, 327 S.W.3d at 133, we hold that FSI has met its initial burden of establishing coverage under the terms of the Policy, *see id.* at 124.

incorporates FSI's defective product or work. Subsections (1) and (3) clearly encompass the loss of use of the vessel due to the failure of the engines following repairs and faulty diagnostic work by FSI on those engines. For the same reasons explained for Claim One, Exclusion "m" applies to Claim Two.

Turning to the SRL coverage, Exclusion "e" applies. Exclusion "e" to the SRL portion of the Policy states that the Policy does not apply to "demurrage, loss of time, loss of freight, loss of charter and/or similar and/or substituted expenses." FSI asserts that Exclusion "e" does not apply because it does not specifically list "loss of use damages" or "property damages" as items to exclude. It interprets J.A.M.'s petition as alleging the loss of use of property (the *Betty L*), and it suggests that this loss is separate and distinct from the losses contemplated by Exclusion "e," which are specific to expenses. This argument is without merit. The Supreme Court long ago defined demurrage as "the loss of profits or of the use of a vessel pending repairs or other detention," commenting that this definition "is too well settled both in England and America to be open to question." *The Conqueror*, 166 U.S. 110, 125 (1897). Additionally, Exclusion "e" is intentionally expansive, and includes "similar and/or substituted expenses." Here, J.A.M.'s four state court petitions make it clear that it is in the business of providing offshore rigs and vessels with fuels and lubricants through the use of its barge and tug boats. Due to the need for further repairs, J.A.M. lost the use of its vessel, including the profits it could obtain by using the vessel to provide other vessels with fuel and lubricants. There is no ambiguity in the Policy on this point, and, by its terms, there is no SRL coverage for Claim Two.

### 3. Damage to J.A.M.'s property resulting from FSI's negligent installation of the engines.

J.A.M. alleged that its port engine exhibited mechanical failure ten months after it was installed and that the starboard engine exhibited

11

mechanical failure shortly thereafter. FSI seeks a defense for this claim under CGL coverage. However, CGL Exclusion "k" precludes coverage for "'Property damage' to 'your product' arising out of it or any part of it." As previously mentioned, the Policy defines "Your product" as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . You."

Under Texas law, liability policies containing similar exclusions "[do] not insure the policyholder against liability to repair or replace his own defective work or product, but [they do] provide coverage for the insured's liability for damages to other property resulting from the defective condition of the work, even though injury to the work product itself is excluded." *Travelers Ins. Co. v. Volentine*, 578 S.W.2d 501, 503–04 (Tex. Civ. App.—Texarkana 1979, no writ).[6] FSI argues that Exclusion "k" does not apply because J.A.M. alleges damage to internal parts of the engines that are not FSI's "product." However, a plain reading of the Policy shows that the exclusion applies to "any part of" FSI's product, which are the engines that FSI handled and distributed. The internal parts of the engine are still components of the engine. Moreover, J.A.M.'s petitions alleged that FSI installed the *entire* engine. FSI's attempt to separate the engine components is unavailing, and Exclusion "k" applies to this claim.

4. <u>Damage to J.A.M.'s property resulting from FSI's negligence in performing diagnostic work and repairs.</u>

The fourth claim encompasses J.A.M.'s allegation that the *Betty L* was damaged as the result of FSI's diagnostic and repair work on both engines in

---

[6] In *Travelers Insurance*, the CGL coverage did not apply to "[p]roperty damage to work performed by or on behalf of the Named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." 578 S.W.2d at 503.

May and June 2007. This damage necessitated additional repairs and the replacement of an entire engine. FSI argues that there is CGL and SRL coverage for this claim.

Since J.A.M. alleged damage to the engine, which constitutes FSI's "product," for the reasons discussed under Claim Three, Exclusion "k" bars coverage under the CGL portion of the Policy. Likewise, there is no SRL coverage under Exclusion "n," which applies to "the expense of redoing the work improperly performed by [FSI] or on [FSI's] behalf or the cost of replacement of materials, parts or equipment furnished in connection therewith." J.A.M. clearly alleged that FSI performed substandard repair work, and, as a result, it "was forced to pay, out of its own pocket, for what should have been warranty work on the . . . engines." Thus, there is no SRL coverage for this fourth claim.

## IV.   Conclusion

Since all of FSI's claims fall within an exclusion to the CGL and SRL coverage portions of the Policy, Continental has no duty to defend FSI. Therefore, we AFFIRM the judgment of the district court.