# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 15, 2023

Lyle W. Cayce
Clerk

———————————

No. 22-10997

———————————

David O'Donnell,

*Plaintiff—Appellant*,

*versus*

Avis Rent A Car System, L.L.C.; ACE American Insurance
Company,

*Defendants—Appellees*.

———————————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-2687

———————————————————————————

Before Duncan and Wilson, *Circuit Judges*, and Mazzant, *District Judge*.[*]

Per Curiam:[†]

Judgment-creditor David O'Donnell sued Avis Rent a Car System, L.L.C. and ACE American Insurance Company seeking insurance proceeds under a policy issued to judgment-debtor Juan Pablo Zavala Diaz. Avis and ACE moved for summary judgment, and the district court adopted the

———————————

[*] District Judge of the Eastern District of Texas, sitting by designation.

[†] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

magistrate judge's recommendation to grant the motion. O'Donnell timely appealed. We affirm.

## I.

In January 2015, Diaz, a Spanish citizen, traveled to Dallas, Texas, on business. On arriving, he entered into a car rental contract with Avis (the Rental Agreement). The Rental Agreement included liability insurance coverage of up to $30,000. However, Diaz paid an extra premium to purchase an optional $2 million in additional liability insurance (ALI). Apparently, unbeknownst to Diaz, and unclear from the language of the Rental Agreement, ACE issued this additional coverage. While driving the car, Diaz collided with another car in which O'Donnell was a passenger, and O'Donnell allegedly sustained injuries to his brain. Diaz cooperated with law enforcement and Avis at the accident scene. Later he returned to Spain.

In November 2016, O'Donnell sued Diaz, seeking compensation for his injuries. O'Donnell then joined Avis as a defendant in the suit. As the case progressed, O'Donnell was unable to serve Diaz. In March 2019, the court granted summary judgment for Avis. That June, O'Donnell finally served process on Diaz via email as authorized by court order. Because Diaz neither made an appearance nor filed an answer, the district court entered a default judgment against him for $2 million. O'Donnell then filed an application for a turnover order in aid of collection of judgment. The district court granted the order, transferring to O'Donnell "any and all interest in legal claims [Diaz] may have had against any party arising out of the traffic accident that he was involved in on January 15, 2015." O'Donnell thereby stepped into the shoes of Diaz, inheriting both his claims and all defenses to his claims. *See Fid. & Deposit Co. of Maryland v. Conner*, 973 F.2d 1236, 1243 (5th Cir. 1992); *Martinez v. ACCC Ins. Co.*, 343 S.W.3d 924, 929 (Tex. App.—Dallas 2011, no pet.).

No. 22-10997

In November 2019, O'Donnell filed the present action against Avis, ACE, and others not party to this appeal. He alleged, as Diaz's judgment-creditor, that Avis breached the Rental Agreement with Diaz, and, alternatively, that Diaz's election of ALI created an additional insurance contract (the ALI Policy) that Avis and ACE breached. Avis and ACE moved for summary judgment. The magistrate judge issued a report and recommendation to grant Avis and ACE's motion, to which O'Donnell objected. The district court adopted the magistrate judge's ruling *in toto*.

The district court rejected both of O'Donnell's theories. First, the court held that, on its own terms, the ALI Policy "bec[a]me[] the relevant policy," thus defeating O'Donnell's claims grounded on the Rental Agreement. *O'Donnell v. Avis Rent A Car Sys. LLC*, No. 3:19-CV-2687-S-BK, 2022 WL 962513, at *11 (N.D. Tex. Mar. 11, 2022), *report and recommendation adopted*, No. 3:19-CV-2687-S-BK, 2022 WL 954338 (N.D. Tex. Mar. 30, 2022). Second, as to O'Donnell's claims under the ALI Policy, the court found that Diaz failed to comply with the ALI Policy's notice of suit and delivery of process conditions. *Id.* at *9–10. The court concluded that Avis and ACE were prejudiced by Diaz's failure to comply with those conditions. *Id.* at *9–10. Therefore, the court held that O'Donnell's claims against Avis and ACE failed and granted summary judgment in favor of the defendants.

On appeal, O'Donnell has refined his arguments. He now contends that he is entitled to either $30,000 or $2 million in coverage under the Rental Agreement. His argument is premised on the notion that Diaz's election of ALI increased the baseline liability coverage of $30,000 that Avis itself offered to $2 million. However, according to O'Donnell, Diaz was not bound by the conditions precedent of the ALI Policy because the ALI Policy is not incorporated into the Rental Agreement.

3

No. 22-10997

Alternatively, O'Donnell urges that if the ALI Policy is incorporated into the Rental Agreement such that the terms of the ALI Policy control, then Diaz complied with the conditions precedent to coverage. O'Donnell sidesteps the undisputed fact that Diaz never provided notice of suit and never forwarded process to ACE by asserting that Avis and ACE served as agents for each other and for Diaz, such that the companies' receipt of process and notice of suit from their shared adjuster satisfies the ALI Policy's requirement that Diaz provide notice of suit and forward process. Finally, as an independent ground for reversal, O'Donnell contends that Avis and ACE failed to show prejudice resulting from Diaz's failure to provide notice of suit or forward process to ACE.

## II.

We review the district court's grant of summary judgment *de novo*. *GWTP Invs., L.P. v. SES Americom, Inc.*, 497 F.3d 478, 481 (5th Cir. 2007). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (citation and quotation marks omitted). We also review the district court's interpretation of an insurance contract *de novo*. *Am. Nat. Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001).

We begin by (A) analyzing whether, as the district court concluded, the terms of the Rental Agreement yield to those of the ALI Policy. We answer that question in the affirmative, so we next consider (B) whether Diaz satisfied the conditions precedent of the ALI Policy such that O'Donnell can collect under the policy. Because Diaz failed to satisfy the relevant conditions, O'Donnell cannot invoke the ALI Policy's coverage.

No. 22-10997

## A.

Under Texas law, which the parties agree applies, "insurance policies are interpreted by the same principles as contract construction." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 454 (5th Cir. 2022) (citation omitted). "All parts of the policy are read together, and courts must give effect to each word, clause, and sentence, and avoid making any provision within the policy inoperative." *Id.* at 455 (citation and quotation marks omitted). When a contract is unambiguous, the "intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written." *Tex. v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) (citation and quotation marks omitted). "We begin with the language of the policy because it is presumed parties intend what the words of their contract say." *Terry Black's Barbecue*, 22 F.4th at 454 (citation, alteration, and quotation marks omitted).[1]

Our focus is on the interplay between paragraphs 19 and 20 of the Rental Agreement. Paragraph 19, titled "Liability Protection," provides in relevant part: "[a]nyone driving the car who is permitted to drive it by this agreement will be protected against liability . . . up to the minimum financial responsibility limits required by the law of the jurisdiction in which the accident occurs." Thus, under Texas law, the Rental Agreement provides a

---

[1] O'Donnell argues in his reply brief that the ACE Policy does not apply to the Rental Agreement because the Rental Agreement was not "signed." We do not address arguments raised for the first time in a reply brief. *United States v. Rodriguez*, 602 F.3d 346, 360 (5th Cir. 2010). Moreover, under Texas law, while a signature often serves as "evidence of the mutual assent required for a contract," it is not required. *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 277 (Tex. 2015). And any absence of a signature is of no moment because O'Donnell admits that Diaz agreed to the rental contract.

5

base amount of $30,000 in liability coverage. *See* Tex. Transp. Code § 601.072.

Paragraph 20, titled "Additional Liability Insurance (ALI) & Exclusions," provides:

> You'll pay for ALI coverage if available and you accept it. In that case, the coverage provided by us according to paragraph 19 above will be primary and the combined limits of liability protection shall be $1,000,000 or $2,000,000, depending on the place of rental for bodily injury, death, or property damage for each accident, but not for more than the contracted $1,000,000 to $2,000,000 limit for each accident, instead of the basic limits stated in paragraph 19 above. This additional coverage will be provided to an authorized driver . . . under a *separate policy of excess liability insurance* more fully described in the available brochure and is subject to all of the conditions and limitations described in paragraph 19 above, *except that notwithstanding anything contained in this agreement, the terms of the policy will at all times control.*

(emphasis added). The Rental Agreement refers to itself throughout as "this agreement" or "this rental agreement." By contrast, paragraph 20 refers first to "a separate policy of excess liability insurance," then states that "the policy will at all times control" over "this agreement." On its face, then, paragraph 20 requires that the terms of the Rental Agreement yield to those of the ALI Policy. Thus, Diaz was required to comply with the conditions in the ALI Policy to benefit from its coverage.

O'Donnell attempts to evade this language by contending that the ALI Policy was insufficiently identified in the Rental Agreement to be incorporated by reference. As a result, the terms of the ALI Policy cannot control, the Rental Agreement's terms do, and he is entitled to insurance proceeds of either $30,000 (per paragraph 19) or $2 million (per paragraph

20), irrespective of the ALI Policy's conditions precedent. "Under Texas law, a contract may incorporate an unsigned document by reference provided the document signed by the defendant plainly refers to another writing." *Sierra Frac Sand, L.L.C. v. CDE Glob. Ltd.*, 960 F.3d 200, 203 (5th Cir. 2020) (citation and quotation marks omitted). No magic words are required. *Id.* But "plainly referring to a document requires more than merely mentioning the document. The language in the signed document must show that the parties intended for the other document to become part of the agreement." *Id.* (citation and quotation marks omitted).

*Sierra Frac Sand* controls our analysis. There, we held that "by making [an] agreement 'subject to' the 'Standard Terms and Conditions of Sale' that were available on request, the contract explicitly refer[red] to another document." *Id.* at 204. Similarly, paragraph 20 of the Rental Agreement makes it subject to the ALI Policy because "the terms of the [ALI] [P]olicy will at all times control." And paragraph 20 notes that a brochure detailing the ALI policy was available to Diaz. Thus, the Rental Agreement "plainly refers to another writing," much as in *Sierra Frac Sand*. *See id.* at 203. Further, it is clear from the parties' actions that they intended the ALI Policy "to become part of [their] agreement," *id.*, as Avis offered ALI as optional coverage, and Diaz paid an additional premium for it. In sum, we easily conclude that the ALI Policy is incorporated by reference into the Rental Agreement such that the ALI Policy's terms control whether coverage obtains. And, as we discuss next, the ALI Policy contains distinct prerequisites for an insured seeking coverage.

## B.

The ALI Policy contains a clause that provides that "[n]o action shall lie against the company unless as a condition precedent thereto, the Insured

No. 22-10997

shall have fully complied with all the terms of this Policy[.]" Clause L, titled "notice of loss," provides:

> When an event causing injury or damage takes place which is reasonable [sic] likely to give rise to a claim under this Policy, written notice shall be given as soon as practicable by or on behalf of the Insured to [ACE] or any of its authorized agents in addition to any obligation the Insured may have under the Underlying Protection or any other insurance. Such notice shall contain particulars sufficient to identify the Insured and reasonably obtainable information concerning the time, place and circumstances of such event and pertinent details. *The Insured's* [sic] *shall give like notice of any claim or suit on account of such event and shall immediately forward to [ACE] every demand, notice, summons or other process received by him or his representative*, together with copies of reports or investigations made by the Insured with respect to such claim or suit.

(emphasis added). Clause L thus contains two distinct conditions precedent. The first is clear: The insured, or someone on his behalf, must give written notice to ACE as soon as an event causing injury that is reasonably likely to lead to a claim takes place. The second, because of sloppy verbiage, is more opaque: It requires the "Insured's" to "give like notice of any claim or suit on account of such event" and forward "every demand, notice, summons or other process received by him or his representative."

Avis and ACE contend that the language used in Clause L means that the insured—and only the insured—can satisfy the notice of suit provision. In other words, only Diaz himself could satisfy the latter notice requirement to invoke coverage. O'Donnell, by contrast, reads the notice of suit provision to parallel the earlier notice of claim provision, i.e., that Diaz's duty to provide notice of suit could have been discharged by someone else on Diaz's behalf. (And, indeed, that it was.)

8

No. 22-10997

As Clause L is not a model of careful drafting, it may well be reasonable to read the notice of suit provision as O'Donnell urges. *Cf. TIG Specialty Ins. Co. v. Pinkmonkey.com Inc.*, 375 F.3d 365, 373 (5th Cir. 2004) (Pickering, J., concurring) ("Under well-established Texas law, if a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured.") (citation and quotation marks omitted).  But even assuming notice of this suit could have been given to ACE by someone "on behalf of" Diaz, O'Donnell's argument still fails because it never was.

O'Donnell urges that Avis gave ACE notice on Diaz's behalf.  He reasons that Avis was Diaz's agent for the purpose of the ALI Policy because Avis sold Diaz the policy.  And he contends that Avis gave ACE notice of the suit against Diaz.  Basically, per O'Donnell, Avis's notice of suit to ACE discharged the notice of suit condition for Diaz as well.

But the record contains no evidence that Avis—nor anyone else—gave notice of suit *on Diaz's behalf.*  And we cannot assume, based solely on the purported agency relationship between Diaz and Avis, that Avis's notice to ACE was necessarily for Diaz too.  On the contrary, Avis was acting in its own interest throughout the underlying suit.  Texas law recognizes that notice of suit provisions are important because they "let[] the insurer know that the insured is subject to default and expects the insurer to interpose a defense."  *National Union Fire Insurance Company of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 609–10 (Tex. 2008).  Nothing in the record suggests that Avis's notice of suit to ACE mentioned Diaz at all, much less requested a defense for him.  Therefore, neither the letter nor the spirit of the notice of suit provision was satisfied.

But that is not quite the end of our analysis.  Under Texas law, "an insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay."  *PAJ, Inc. v. Hanover*

*Ins. Co.*, 243 S.W.3d 630, 636–37 (Tex. 2008). O'Donnell contends that Avis and ACE cannot show prejudice because they had actual knowledge of the suit against Diaz based on Avis's participation in the lawsuit and Avis's agency relationship with ACE. Avis and ACE counter that their actual knowledge is irrelevant under Texas law.

Avis and ACE have the better argument. Consider *Crocker*. In that case, Beatrice Crocker sued Emeritus Corporation and its employee, Richard Morris, for injuries Crocker sustained when she was hit by a door swung open by Morris. 246 S.W.3d at 604. Emeritus's insurer, National Union, stepped in to defend Emeritus, but did not defend Morris, though he qualified as an additional insured under the policy. *Id.* at 604–05. Morris was unaware that he was an additional insured and was similarly ignorant of the policy's terms and conditions, including its notice of suit condition. *Id.* at 605. As a result, despite being served, he failed to comply with that condition. He also never made an appearance. *Id.* After Crocker received a default judgment against Morris, she sued National Union to collect. *Id.*

Despite National Union's actual knowledge of, and participation in, the litigation against Morris and Emeritus, the Supreme Court of Texas denied coverage. The *Crocker* court noted that "National Union was obviously prejudiced in the sense that it was exposed to a $1 million judgment." *Id.* at 609. Importantly, the court held that National Union should not be estopped to deny coverage even though it was "aware that Morris had been sued and served and had ample time to defend him." *Id.* The court reasoned that the insurer's duties to defend and provide coverage only arise once the insurer knows that "the insured is subject to default *and* expects the insurer to interpose a defense." *Id.* at 609–10 (emphasis added). The court noted there were many reasons why an insured may opt out of seeking a defense from his insurer, and insurers need not subject themselves to gratuitous coverage and defense liability. *Id.* at 610.

No. 22-10997

The same result obtains here. *Crocker* is clear that an insurer's actual knowledge of a suit against its insured does not, in itself, nullify prejudice suffered by the insurer as a result of the insured's failure to give notice of suit. Thus, it is of no moment that Avis and ACE knew that Diaz had been sued—he still needed to provide notice of that suit to ACE under the terms of the ALI Policy. Because Diaz failed to satisfy a condition precedent to coverage and that failure prejudiced ACE, the insurer acted within its rights in denying coverage. The district court's summary judgment is

AFFIRMED.